UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                                        Plaintiff,

          v.                                    1:07-cv-0352

ROBERT L. SCHULZ;
WE THE PEOPLE FOUNDATION FOR
CONSTITUTIONAL EDUCATION, INC.; and
WE THE PEOPLE CONGRESS, INC.,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

### DECISION and ORDER

The United States of America commenced the instant action seeking to enjoin Defendants from promoting an illegal tax shelter.  Presently before the Court are Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12 and Plaintiff's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.

I.      **FACTS**

Defendant Robert L. Shulz ("Schulz") organized Defendant We the People Foundation for Constitutional Education Inc., and We the People Congress, Inc. in 1997. The Complaint alleges that, although Shulz purports to have founded the corporate defendants for educational purposes, he "has used the two . . . entities . . . to market a nationwide tax-fraud scheme designed to help customers evade their federal tax liabilities and to interfere with the administration of the internal revenue laws."  Compl. at ¶ 6.

Defendants distributed a "Tax Termination Package" as part of "Operation Stop Withholding" to help individuals stop withholding, paying, and filing federal taxes.  The United States alleges that Defendants furthered their scheme through the use of false and misleading forms in place of standard Internal Revenue Service ("IRS") forms, and based upon the false premises that the federal income tax system is voluntary, the 16th Amendment to the United States Constitution was not property ratified, and that federal income tax does not apply to most wages.

The Complaint alleges that, among other things, "[a]s part of the Tax Termination scheme, Defendants give customers (both employers and employees) step-by-step instructions on how to fraudulently terminate withholding of federal income and employment taxes." Compl. at ¶ 14.  The entire scheme is alleged to be premised upon false representations and legal positions known to have been rejected by the courts, including a criminal trial in which Schulz testified.  See United States v. Simkanin, 420 F.3d 397 (5th Cir. 2005).

The Complaint alleges that Defendants' scheme causes harm to the Untied States by assisting customers to evade taxes and obstructing the IRS's efforts to administer the federal tax laws.  The United States seek an injunction pursuant to Internal Revenue Code § 7408 precluding Defendants from making known false or fraudulent statements in connection with the organization or participation in the sale of a plan or arrangement regarding any tax benefit.

Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12 and Plaintiff's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56( c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.    DISCUSSION

### a.      Plaintiff's Request for Injunctive Relief

"Section 7408 of the Internal Revenue Code empowers a district court to grant an injunction when (1) the defendant has engaged in conduct subject to penalty under 26 U.S.C. § 6700, and (2) injunctive relief is appropriate to prevent recurrence of such conduct." United States v. Gleason, 432 F.3d 678, 682 (6th Cir. 2005). "Because section 7408 expressly authorized the issuance of an injunction, the traditional requirements for equitable relief need not be satisfied." Id.

## 1.    Internal Revenue Code § 6700

The Court will first address whether Defendant's conduct implicates the proscriptions of 26 U.S.C. § 6700.[1]  Section 6700 is aimed at abusive tax shelters.  To obtain an injunction under § 6700, the government must prove five elements:

---

[1] That section reads, in relevant part, as follows:

(a) Imposition of penalty.--Any person who--

(1)(A) organizes (or assists in the organization of)--

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--

    (A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

    (B) a gross valuation overstatement as to any material matter,

shall [be guilty of a crime].

- 4 -

> (1) the defendants organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) they made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) they knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct.

United States v. Estate Preservation Servs., 202 F.3d 1093, 1098 (9th Cir. 2000); Gleason,

432 F.3d at 682.  The Court will address each element *seriatim*.

### a.  Whether Defendants Organized or Sold, or Participated in the Organization or Sale of, an Entity, Plan, or Arrangement

Under § 6700, "any 'plan or arrangement' having some connection to taxes can

serve as a 'tax shelter' and will be an 'abusive' tax shelter if the defendant makes the

requisite false or fraudulent statements concerning the tax benefits."  United States v.

Raymond, 228 F.3d 804, 811 (7th Cir. 2000).  In Raymond, the Seventh Circuit found that

"the definition of a tax shelter in § 6700 is 'clearly broad enough to include a tax protester

group.'" Id. (quoting United States v. Kaun, 827 F.2d 1144, 1147 (7th Cir. 1987).

The facts in the Raymond case are quite similar to the present one.

> Raymond and Bernhoft [were] active members of the U.S. Taxpayers Party and were the chief participants in a business known as Morningstar Consultants ("Morningstar").  Between January and June of 1996, Morningstar ran a weekly advertisement in a local Wisconsin newspaper under the caption "Just Say No."  The Just Say No advertisement contained the following statements: 1) "Federal, State & Social Security Taxes are Voluntary;" and 2) "The Internal Revenue Service has no Statutory Authority to: Compel you to file a Tax Return, Require withholding from your paycheck, Levy or Lien your property, Audit your Books & Records."  This advertisement was part of an effort by Morningstar to market the "De-Taxing America Program" (the "Program"). The Program consists of three volumes of materials.  These materials contain information presenting the view that, among other things, the federal income tax is unconstitutional and that persons who are not federal employees or residents of the District of Columbia are not legally required to pay federal income tax.  In addition to providing information

> regarding general tax-protest principles, the Program includes several forms and instructions to guide the purchaser through the process of "de-taxing."  Purchasers are informed that if they complete the materials and directions in the Program they will be "withdrawn" from the jurisdiction of the federal government's taxing authorities and the social security system and will no longer be required to pay federal taxes. . . . Program customers are instructed to file W-4 forms with their employers asserting that they are exempt from federal taxation and requesting that the employers stop withholding federal income tax and social security payments from their paychecks. . . .
>
> The Program also provides the purchaser with instructions on how to complete future tax returns to reflect that the purchaser has not incurred any tax liability in the previous year and consequently does not owe any federal income or social security taxes.

Id. at 806-07.  "The Program purported to provide step-by-step instructions for 'removing' the purchaser from the federal income and social security tax systems.  The Program materials assured readers that the federal government is without authority to tax them and that by following the instructions outlined in the Program individuals can legally refuse to pay federal income and social security tax."  Id. at 811.  The Seventh Circuit concluded that the program was a tax shelter.  The Raymond court further found that because the defendants in that case had sold the product, it qualified as a plan within the meaning of § 6700.

Here, as in Raymond, Shulz has organized the two corporate Defendants.  See Def.'s Stmnt. of Mat. Facts at ¶ 1.  Defendants offer materials to employees and employers stating that, among other things, Congress is without authority to legislate an income tax on people except in the District of Columbia and United States territories, the IRS is prohibited from compelling people to sign and file income tax returns, and the Sixteenth Amendment to the United States Constitution was never properly ratified and, therefore, the income tax violates the Constitution.  Schulz Decl. #1 at Ex. B.  Among other things, Defendants' materials instruct workers how to terminate their W-4 Agreement and demand that the

employer discontinue making withholdings from their pay.  Id. at Ex. C.  In fact, Defendants

provide forms for that very purpose.  Id.[2]  Thus, the Court finds that Defendants have

organized a "plan" or "arrangement."  Although there are some questions of fact concerning

whether Defendants sold their materials, they clearly "organized" the materials for

presentation.[3]  Defendant Schulz admits that he undertook "'Operation Stop Withholding,' a

national campaign to instruct company officials, workers and independent contractors on how

to legally stop wage withholding."  Schulz Decl. #1 at ¶ 4.  Defendants also offer to provide a

"customized legal opinion letter from an attorney or CPA to be sent to your company or their

tax and/or legal advisors."  Schulz Decl. #1 at Ex. C, p. 11.  Stated otherwise, Defendants are

promoting an abusive tax shelter.  Accordingly, the first element is satisfied because

Defendants organized a plan or arrangement concerning the avoidance of taxes.

---

[2] Other examples of Defendants' plan are set forth infra at pp. 9-10 and 22-23.

[3] The evidence in the record is that Defendants provided the program materials and gave
seminars for free.  The evidence also demonstrates that Defendants used the materials to solicit
donations to the organizations and to encourage people to join their organization for a fee.  In a prior
case involving Defendant Shulz, it was noted that

> We The People Foundation's website invites visitors to make a donation to an
> organization via credit card to PayPal or by mail directly to We the People Foundation.
> The address given for the We The People Foundation is Schulz's home address.  The
> website also contains an on-line store where products can be purchased through PayPal.
> One of the products sold over the website is the "Tax Termination Package," which is
> offered for sale for $39.95. The product is described as "Bob Schulz, Chairman of the We
> The People Foundation, stopped paying income taxes and filing returns. These are the
> materials he sent to the IRS. Make sure to get a copy for your personal records."  [The
> IRS] has also learned that the We The People Foundation filed IRS Form 990 for the
> years ending December 31, 2001, December 31, 2002, and December 31, 2003 and the
> returns indicate that the organization showed considerable revenue for each year.

Schulz v. U.S., 2006 WL 1788194, at *1 (D. Neb. 2006).

**b. Whether Defendants Made or Caused to be Made, False or Fraudulent Statements Concerning the Tax Benefits to be Derived From the Entity, Plan, or Arrangement**

"[T]o prove a violation of § 6700, the Government must also show that the [defendants] made false or fraudulent statements concerning the tax benefits of participating in the plan or arrangement." Raymond, 228 F.3d at 812. "Two types of statements fall within the statutory bar: statements directly addressing the availability of tax benefits and those concerning factual matters that are relevant to the availability of tax benefits." United States v. Cambpell, 897 F.2d 1317, 1320 (5th Cir. 1990). Once again, referral to Raymond is instructive. In that case, the Seventh Circuit found that the defendants' statements that "payment of income tax is a voluntary activity and that individuals cannot be legally compelled to file tax returns or submit to tax investigations or penalties" "are clearly false representations concerning the government's authority to tax its citizens." Id. That court concluded that "[t]hese statements made in conjunction with the sale of the Program operated as false assurances that refusing to pay taxes in accordance with the Program's instructions is a lawful activity for which the government has no legal authority to punish Program subscribers." Id.

Defendants' conduct here is virtually identical to that in Raymond. Defendants make claims similar to those in Raymond. Among other things, Defendants affirmatively state that domestic income is not taxable, the filing of a tax return is voluntary, see Defs' Mem. of Law at 10; Schulz Decl. #1 at Ex. B, p. 14, and that the 16th Amendment was not properly ratified and, therefore, the income tax is unconstitutional.[4] Defendants also instruct

---

[4] Other false statements are discussed *infra* at pp. 22-23.

that, "[o]nce the government has been properly notified and termination of withholding has been procedurally put into effect, the [employer] has no further reporting requirements under U.S. law." Schulz Decl. #1 at Ex. C, p. 8. Defendants further claim that the IRS is prohibited by the Fourth and Fifth Amendments from compelling people to sign and file income tax returns. Schulz Decl. #1 at Ex. C. Defendants also claim that they, and other taxpayers, have the right to "retain[] [their] money until [their] grievances are redressed (remedied)." Schulz Decl. #1 at Ex. H, p.2.[5] These are all false statements of fact. See 26 U.S.C. § 3102 (requiring employers to make deductions from wages); Raymond, 228 F.3d at 812 (discussing various similar false statements about taxes); Schiff v. United States, 919 F.2d 830 (2d Cir. 1990); United States v. Sitka, 845 F.2d 43, 47 (2d Cir. 1988) ("[F]ederal courts have upheld and relied on the Sixteenth Amendment for more than seventy-five years. . . . The Sixteenth Amendment was proposed by Congress and ratified by the states in accordance with procedures set out in Article V of the Constitution, and its ratification was then certified after careful scrutiny by a member of the executive branch acting pursuant to statutory duty. The validity of that process and of the resulting constitutional amendment are no longer open questions.") (internal citations omitted); Coleman v. Commission of Internal Revenue, 791 F.2d 68, 70-72 (7th Cir. 1986) (statements that wages are not income and that the income tax is unconstitutional are false and "tired arguments"); United States v. Carley, 783 F.2d 341, 344 (2d Cir. 1986) ("'[T]here is no question but that Congress has the authority to impose an income tax.'") (quoting Ficalora v. Commissioner, 751 F.2d 85, 87 (2d Cir. 1984)); Ficalora, 751 F.2d at 88 (wages are taxable income); Kile v. Commissioner of Internal

---

[5] Defendants sent a long list of questions to various government agencies demanding answers. It is Defendants' position that, until the government responds, it need not pay taxes.

Revenue, 739 F.2d 265, 167-68 (7th Cir. 1984) (similar to Coleman); Denison v.

Commissioner of Internal Revenue, 751 F.2d 241 (8th Cir. 1984) (similar); Wright v.

Commissioner of Internal Revenue, 752 F.2d 1059, 1062 (5th Cir. 1982) (claim that tax

returns violate the right against self-incrimination is frivolous);  see also Allamy v. United

States, 207 Fed. Appx. 7, at *2 (2d Cir. 2006) ("[A]rguments that the federal income tax is

unconstitutional and that wages are not taxable income" have been "long-rejected");

Stearman v. Commissioner of Internal Revenue, T.C. Memo. 2005-39, 2005 WL 488646

(March 3, 2005), aff'd, 436 F.3d 533 (5th Cir. 2006).

    Moreover, it is evident that Defendants' false statements concern the tax benefits to

be derived from the plan.  As Defendants' literature makes clear, their campaign includes

"instructions for companies, workers and independent contractors on how to legally stop

withholding, *filing and paying the tax."*  Schulz Decl. at Ex. C., p. 3 (emphasis added).  The

obvious claimed benefit from participating in Defendants' plan is that individual income taxes

need not be paid.  Further, Defendants advise employers that they can "eliminate payment of

'matching' employment taxes (FICA, etc.)," id. at p. 7, another claimed tax benefit from

participating in the plan.

    The undisputed evidence further demonstrates that Defendants knew, or had

reason to know, that their statements were false.  See Estate Preservation Servs., 202 F.3d

at 1102.  "The 'knew or had reason to know' standard . . . includes what a reasonable person

in the defendant's subjective position would have discovered."  Estate Preservation Servs.,

202 F.3d at 1103.  The following factors are relevant in determining whether a defendant had

the requisite scienter to violate § 6700: (1) the extent of the defendants' reliance upon

knowledgeable professionals; (2) the defendants' level of sophistication and education; and (3) the defendants' familiarity with tax matters.  Id.

There is a paucity of evidence, if any, suggesting that Defendants relied upon knowledgeable professionals.  To the contrary, the evidence is that they relied on fringe opinions of known tax protestors whose theories have repeatedly been rejected by courts across the country.  Several of the people on whom Defendants claim to rely have been convicted of tax crimes.  Accordingly, this factor weighs in favor of finding the requisite intent.

Turning to the second and third factors, a search of case law reveals that Defendant Schulz has been litigating tax-related issues, and presenting similar arguments, for a long time.  Schulz states in his Declaration #3 that he has extensive experience researching, writing briefs and arguing cases against "wayward government" in state and federal courts.  Schulz Decl. #3 at ¶ ¶11-13.  He specifically states he has significant experience researching and arguing tax-related issues.  See generally id.  Accordingly, Defendants have sufficient sophistication and education to be held accountable for their actions.[6]

Furthermore, Defendants have long been involved with these tax-related arguments.  Defendant Schulz acknowledges that he is aware that numerous courts across the country have rejected attacks on the Sixteenth Amendment as improperly ratified.  See Schulz Decl. #3 at ¶ 21.  He also admits being aware of various Circuit Court of Appeals decisions rejecting the types of claims he makes in his materials.  Id. at ¶¶ 23-24.  In addition, the obligation to pay taxes is common knowledge.  As the Second Circuit has

---

[6] Inasmuch as Schulz operates the two corporate entities, his knowledge may be imputed to them.

stated, "'[t]he payment of income taxes is not optional . . . and the average citizen knows that

the payment of income taxes is legally required'." Schiff, 919 F.2d at 834 (quoting United

States v. Schiff, 876 F.2d 272, 275 (1989)).  It is thus clear that Defendants actually knew,

and certainly had reason to know, their statements were false.

Defendant claims that it has not made any false or fraudulent statements because

it provided a disclaimer in its materials.  Defendants' materials state that:

> The materials presented herein contain legal content referencing and
> directly citing official U.S. tax statutes, tax regulations and federal court
> decisions regarding the limited authority of the U.S. Government to
> impose income taxes or withholding, and the legal duties and obligations
> (or lack thereof) that are allegedly imposed upon American business and
> the Americans that labor for them.
>
> **These materials are presented solely for educational purposes.**
> Although these materials may be used in attempting to secure and
> exercise one's Constitutionally protected Rights . . . We The People
> makes NO representation that there materials constitute legal advice and
> furthermore specifically encourages all workers and business owners to
> submit these materials to qualified legal counsel for review and advice.

Schulz Decl. #1 at Ex. C, p. 1.

The fact that Defendants purport to contain disclaimers in their materials is

irrelevant.  "[I]t is well established that a general, boilerplate disclaimer of a party's

representations cannot defeat a claim for fraud."  Dallas Aerospace, Inc. v. CIS Air Corp.,

352 F.3d 775, 785 (2d Cir. 2003).  Significantly, the purported disclaimer is insufficient for

several reasons.  First, nowhere do Defendants' materials disclaim the basis for their claims

concerning the tax laws.  Rather, Defendants merely "encourage" people to have the material

reviewed by "qualified legal counsel."  Second, although the materials are claimed to be

presented only for education purposes, the materials affirmatively state that they are based

on "legal content" "directly citing" various laws and court opinions.  This gives the impression

that the statements in the documents are based upon a sound legal foundation.  Third, the

purported disclaimer says that the "materials may be used in attempting to secure and

exercise one's Constitutionally protected Rights."  This could be construed as consistent with

Defendants' position that the federal government may not impose an income tax because,

among other arguments, the Sixteenth Amendment was not properly ratified.  The

"disclaimer," therefore, appears not to disclaim at all.  Fourth, the materials provided by

Defendants represent that "[t]he information is the result of research by tax attorneys and

CPA's, a forensic accountant, a Special Agent of the Criminal Division of the IRS, a former

Revenue Agent of the IRS, a former IRS Auditor and Fraud Examiner, a constitutional

attorney and numerous expert tax law researchers and certified paralegals.  Schulz Decl. #1,

at Ex. C, p. 5.  This, again, detracts from the effectiveness of any purported disclaimer.  Fifth,

it appears that the "disclaimer" appears on Defendants' website, but it is not clear whether it

appears on all the distributed materials.  For example, no such disclaimer is included on the

"Statement of Facts and Beliefs."  Schulz Decl. #1 at Ex. B.  The Court, therefore, finds the

claimed "disclaimer" to be irrelevant.  Thus, the second element has been satisfied.

### c.  Whether the False or Fraudulent Statements Pertained to a Material Matter

The next issue is whether these false statements pertained to a material matter.

"Material matters are those which would have a substantial impact on the decision-making

process of a reasonably prudent investor and include matters relevant to the availability of a

tax benefit."  Campbell, 897 F.2d at 1320.  Statements that one need not file tax returns, that

employers need not make withholdings, that "companies, workers and independent

contractors [can] . . . legally stop withholding, filing and paying the tax," Gordon Aff. at Ex. 4,

etc. clearly are relevant to the availability of the tax benefit and, thus, are material.  Indeed, Defendants' statements appear to be the cause of its clients/members in failing to file tax returns or otherwise attempting to stop having taxes withheld from their wages.[7]  The third element has been satisfied.

### d.  Whether an Injunction is Necessary to Prevent Recurrence

The final element is whether an injunction is necessary to prevent recurrence.

Factors that a court may consider in determining the likelihood of future Section 6700 violations and, thus, the need for an injunction include: (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated.

Estate Preservation Servs., 202 F.3d at 1105.

### (1) The Gravity of Harm

The gravity of harm is manifest.  Defendants have embarked upon a nationwide plan to disseminate its materials to encourage people to stop having taxes withheld from their wages.  Defendants' materials are intended to cause employees to believe that they need not pay an income tax and employers to believe that they need not withhold taxes from employees' wages or pay matching amounts.  As previously noted, people are acting upon

---

[7] In support of this, the United States has provided copies of Defendants' "We The People" tax forms that have been submitted to the IRS or their employers by various individuals.  Gordon Aff. at Exs. 27, 28.  Defendants also have submitted affidavits from Defendants' members indicating that they have stopped paying taxes.  See Deitz Decl. #1 at ¶ 13.  Moreover, Defendants' own submissions reveal that people have acted upon Defendants' advice.  See Schulz Decl. #1 at Ex. H, p. 2 ("Another case involves as group of 12 oil workers in Arkansas that recently sought to terminate their withholding agreements (W-4s) en masse, by submitting WTP [We The People] Form #1 to their company.").  Other examples are listed in Schulz Decl. #1 at Ex. H ("[W]e are hearing daily about many individuals that have filed the forms. . . .").

Defendants' materials by submitting forms supplied and created by Defendants in an effort to

get their employers to stop withholding taxes from their wages.  This is causing individuals to

expose themselves to criminal liability.  Defendants' conduct also is causing insufficient

payments to the United States Treasury.  Lastly, Defendants' conduct is causing the IRS

significantly increased efforts at collecting taxes.  Although the exact cost of Defendants'

conduct appears to be unknown, the IRS estimates that it spends $1,607 in processing

substitutes for returns for non-filers and, therefore, "[t]he estimated cost to the U.S. Treasury

attributable to filing substitutes for returns for the 2991 unfiled returns equals $4,806,537,"[8]

excluding the time or expense IRS Revenue Officers must expend attempting to collect

unpaid taxes from these individuals.  Gordon Aff. at ¶ 40.  Thus, the gravity of the harm is

sufficient to warrant injunctive relief.  See Raymond, 228 F.3d at 813 (evidence of the

administrative burden placed on the IRC to investigate the tax evasion activities and engage

in collection efforts establishes harm).

### (2) The Extent of Defendants' Participation

This factor clearly weighs in favor of an injunction.  Defendants are the primary

figures in establishing the plan and encouraging other to participate in it.  See Raymond, 228

F.3d at 814.

### (3) Degree of Scienter

The degree of scienter element also weighs in favor of injunctive relief.  As

previously discussed *supra*, Defendants were well aware (or reasonably should have been

---

[8] As is explained below, the United States asserts that 997 of Defendants' customers have not filed federal tax returns for a period of three years, which represents more than 2,991 unfiled tax returns. Gordon Aff. at ¶ 38.

aware) that their assertions have been consistently rejected by the courts.  Nevertheless, Defendants set up their plan, disseminated it, and fully expected that people would buy, or freely download, their materials and use them.  In fact, Defendants claim (which is supported by the evidence submitted by the United States) that people have used their forms to stop having taxes withheld from their wages.  Thus, there is ample evidence that Defendants intended that their members and others would follow the instructions provided in the materials and submit the forms contained therein.  Id.

### e. Isolated or Recurrent Nature of the Infraction

The record evidence is that Defendants' conduct is not isolated.  According to Defendants' own documents, Schulz "has now spoken to well over two thousand people as part of 'Operation Stop Withholding' and continues to be greeted by appreciative and attentive audiences everywhere."  Schulz Decl. #1, at Ex. H, p. 1.  Moreover, Defendants admit to having handed out "3,500 copies" of the "blue folder"[9] "at 37 meetings in 2003 and that [they] put the entire contents of the materials on the website for anyone to read, download and copy. . . ."  Defs.' Responsive Stmnt. of Mat. Facts at ¶ 4.  The United States submits evidence that "997 of defendants' customers . . . have not filed federal tax returns for a period of three years or more, which represents more than 2991 unfiled tax returns."  Gordon Aff. at ¶ 38.  Accordingly, this factor also weighs in favor of issuance of an injunction.  See Raymond, 228 F.3d at 814.

---

[9] The "blue folder" contains the materials prepared by Defendants and discussed throughout this opinion.

### f. Defendants' Recognition (or non-recognition) of Their Own Culpability

Defendants express no recognition of their culpability.  Despite the uniform rejection of their positions, they continue to maintain them and attempt to get others to adopt their views.  As in Raymond, Defendants have "consistently held to their view that federal tax laws are unconstitutional and that the government has no authority to compel the payment of federal taxes."  228 F.3d at 814.  Defendants also continue to claim that they may withhold money from the government until the government responds to its "petition for redress."  Given Defendants' long-time pursuit of these goals, it is easy to conclude that they are likely to continue to engage in their conduct if not enjoined from doing so.  Id.  Indeed, Defendants' materials continue to be available via their website and the mails.

### g.The Likelihood that Defendants' Occupation Would Place Them in a Position Where Future Violations Could Be Anticipated.

Lastly, although Defendants are not professional tax advisers, Defendants' own papers demonstrate that they spend a substantial amount of time, money, and effort promoting their plan.  Their main purpose is to continue to disseminate their plan and encourage employees and employers alike to participate.  It is a virtual certainty that, absent injunctive relief, future violations can be anticipated.

For the foregoing reasons, the Court finds that injunctive relief is warranted.

### b.        First Amendment

Defendants move to dismiss and otherwise defend this action on the ground that their speech is protected by the First Amendment.  Defendants argue that their tax-related materials are discussions of the manner in which government is operated and, therefore,

constitutionally protected.  Defendants further claim that their speech constitutes the lawful

exercise of the right to petition the government.

A very similar argument was presented to the Ninth Circuit in United States v.

Freeman, 761 F.2d 549 (9th Cir. 1985).  In that case, as here, it was alleged that the

defendant "counseled violations of the tax laws at seminars he conducted."  Id. at 551.  "He

urged the improper filing of returns, demonstrating how to report wages, then cross out the

deduction line for alimony and insert again the amount of the wages, showing them as

'nontaxable receipts.'"  Id.  The defendant claimed "he did nothing more than advocate tax

noncompliance as an abstract idea, or at most as a remote act, and that the First

Amendment necessarily bars his prosecution."  Id.

> The Ninth Circuit noted that:
>
> Words alone may constitute a criminal offense, even if they spring from
> the anterior motive to effect political or social change. Where an
> indictment is for counseling, the circumstances of the case determine
> whether the First Amendment is applicable, either as a matter of law or as
> a defense to be considered by the jury; and there will be some instances
> where speech is so close in time and substance to ultimate criminal
> conduct that no free speech defense is appropriate. . . .
>
> Where there is some evidence . . . that the purpose of the speaker or the
> tendency of his words are directed to ideas or consequences remote from
> the commission of the criminal act, a defense based on the First
> Amendment is a legitimate matter for the jury's consideration.

Freeman, 761 F.2d at 551.  Where, on the other hand, there is evidence that the defendant

assisted in the filing of false returns, there is no First Amendment defense.  Id. at 552.  The

Freeman court continued to note that:

> Though a statute proscribes certain speech, in this case counseling, the
> defendant does not have a First Amendment defense simply for the
> asking.  Counseling is but a variant of the crime of solicitation, and the
> First Amendment is quite irrelevant if the intent of the actor and the

objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself. United States v. Barnett, 667 F.2d 835, 842-43 (9th Cir. 1982); [United States v.] Buttorff, 572 F.2d [619] at 624 [(8th Cir. 1978)]. In those instances, where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone.

Id.

The Second Circuit agreed with this line of reasoning in United States v. Rowlee, 899 F.2d 1275 (2d Cir. 1990). In Rowlee, the Second Circuit noted that "'speech is not protected by the First Amendment when it is the very vehicle of the crime itself.'" 899 F.2d at 1278 (quoting United States v. Varani, 435 F.2d 758, 762 (6th Cir. 1970)). Similar to the Ninth Circuit's analysis in Freeman, the Second Circuit noted that:

[C]onduct [is] not protected by the First Amendment merely because, in part, it may have involved the use of language. When speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

Id. (internal quotations, alterations, quotations, and citations omitted). To the extent one comments "generally on the tax laws without aiding, assisting, procuring, counseling or advising the preparation or presentation of the alleged false or fraudulent tax documents," he does not violate the Internal Revenue Code. Id. at 1280. If, however, a defendant urges the preparation and presentation of false IRS forms with the expectation that the advice will be heeded, "the First Amendment afford[s] no defense." Id.; see also United States v. Konstantakakos, 121 Fed. Appx. 902 (2d Cir. 2005) (Noting that "it has long been established that the First Amendment does not shield knowingly false statements made as part of a scheme to defraud" and that "[n]o different conclusion is warranted simply because a knowing falsehood might be couched as an 'opinion'.").

Much of Defendants' conduct is protected speech.  For example, Defendants are free to give speeches on whether the Sixteenth Amendment was properly ratified.  The Court further understands that any injunctive relief will be a prior restraint.  Nevertheless, as discussed, Defendants' scheme violates § 6700 of the Internal Revenue Code.  It is Defendants' "speech" (primarily its written materials) that facilitates the violation of § 6700.

To the extent Defendants' speech can be considered commercial speech,[10] it may be enjoined because the government may prohibit false, misleading or deceptive commercial speech, or speech that promotes unlawful conduct.  United States v. Bell, 414 F.3d 474, 480 (3d Cir. 2005); United States v. Schiff, 379 F.3d 621, 626 (9th Cir. 2004).[11]  Even assuming Defendants are not intending to profit from their services, they are offering a product that is based on false representations.  Defendants seek to have people obtain and use copies of their tax avoidance program based upon false representations.  Defendants sell numerous other products on their websites.  Although Defendant may sometimes give their materials away for free, they do solicit a donation of $20 for each packet of materials they provide.  Thus, if the materials are properly characterized as commercial speech, they may be enjoined and the First Amendment provides no defense.

Assuming Defendants' speech to be political in nature, it still may be enjoined.  The First Amendment does not protect speech that incites imminent lawless action.  Brandenburg

---

[10] Several facts suggest that the speech may be considered commercial.  This includes the following: (1) Defendants request a "donation" for each packet of materials they provide; (2) Defendants invite individuals to become members of their organization for a fee; Gordon Aff. at Ex. 20; (3) Defendants offer numerous items for sale, including videos, pamphlets, CD-ROMs, bumper stickers, brochures, flags, etc., see id.; (4) Defendants offer to sell a "customized legal opinion letter from an attorney or CPA" (noting "discounts are available for WTP Congress members"), Schulz Decl. #1, at Ex. C, p.11; and (5) Defendants advertise their program.

[11] The Court already has concluded that many of Defendants' statements are false.

v. Ohio, 395 U.S. 444, 447 (1969).  Because Defendants are not merely advocating, but have gone the extra step in instructing others how to engage in illegal activity and have supplied the means of doing so (the "We The People" forms created by Defendants supported by a purported legal analysis of the tax laws), their speech may be enjoined.  See United States v. Schiff, 269 F. Supp.2d 1262, 1280 (D. Nev.); see also United States v. Bell, 414 F.3d 474 (3d Cir. 2005); Raymond, 228 F.3d a5 815-16; United States v. Fleschner, 98 F.3d 155, 158-59 (4th Cir. 1996) (no first amendment protection where the defendants held meetings and collected money from attendees whom they instructed and advised to claim unlawful exemption and not to file income tax returns or pay tax on wages in violation of the law.); United States v. Moss, 604 F.2d 569, 571 (8th Cir. 1979); United States v. Kelley, 769 F.2d 215, 217 (4th Cir. 1985) ("The cloak of the First Amendment envelops critical, but abstract, discussions of existing laws, but lends no protection to speech which urges the listeners to commit violations of current law."); United States v. Burtoff, 572 F.2d 619, 624 (8th Cir. 1978) ("[T]he defendants did go beyond mere advocacy of tax reform.  They explained how to avoid withholding and their speeches and explanation incited several individual to activity that violated federal law. . . .").

As previously noted, the government has presented evidence that Defendants gave lectures, collected money in the form of donations and membership fees, provided forms with instructions on the preparation of the forms, and provided statements supporting their false legal beliefs/conclusions.  See e.g. Gordon Decl. at Ex. 4 ("Our national campaign will include instructions for companies, workers and independent contractors on how to legally stop withholding, filing and paying the tax."); id. at Ex. 5 ("Many of you will discover the [employer] has been negligently advised by its so-called 'tax professionals' (attorneys and

CPA's) who falsely claim 'the law requires the Entity to obtain your social security number' or 'the law requires the Entity to withhold' . . . ."); id. at Ex. 6 ("The Individual Income Tax is fraudulent in its origin and enforced without legal authority and without legal jurisdiction on most Americans and American entities. . . . Under U.S. tax law you may *legally* stop withholding taxes and employment taxes, plus legally stop issuing W-2 and 1099 forms to your workers and payees/contractors. . . . Eliminate payment of 'matching' employment taxes (FICA, etc.)"); id. at Ex. 8 ("You will utilize the [We The People] Forms to willfully and legally cease withholding, deducting and diverting any portion of a worker's . . . earnings to pay any tax, fee or other charge. . . ."); id. at Ex. 9 (a form created by Defendants and intended to be signed by employees which states "I do not derive Subtitle A wage Gross Income . . . and my remuneration does not constitute wages for withholding purposes under IRC § 3401(a)(8)(A)(I)" and "I do not derive taxable income . . . from a taxable source. . . . I am outside the venue and the jurisdiction of 26 USC and 26 CFR," and "I incurred no liability for income tax imposed under subtitle A of the Code for the preceding year."); id. at Ex. 10 (a form created by Defendants and intended to be signed by employers which states "[i]t is the Entity's understanding that no American living in a state is 'subject to the jurisdiction of Congress,' generally speaking, unless one is a nonresident alien involved in immigration proceedings or nonresident employee. . . .").  The government also has supplied evidence of Defendants' clients or members using Defendants' materials to avoid tax withholdings, failing to file tax returns, or from otherwise refusing to pay money to the government.  See Gordon Decl. at ¶¶ 33, 36, 37, 38 and Exs. 26, 27, 28.  Because Defendants have actually persuaded others, directly or indirectly, to violate the tax laws, Defendants words and actions were directed toward such persuasion, and the unlawful conduct was imminently likely to

occur, the First Amendment does not afford protection.  That being said, any injunction must be narrowly drawn to separate protected speech from unprotected speech and to protect Defendants' First Amendment rights.

Accordingly, the Court rejects Defendants' First Amendment defense and denies their motion to dismiss in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED and Plaintiff's Cross-Motion for Summary Judgment is GRANTED.[12]

Accordingly, it is hereby ORDERED that:

a.      Defendants and their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them are hereby permanently enjoined from directly or indirectly:

1.      engaging in activity subject to penalty under 26 U.S.C. § 6700, including the organizing, selling, participation in the organization, or participation in the sale of any plan or arrangement and making a statement regarding the securing of any tax benefit that they know or have reason to know is false or fraudulent as to any material matter;

2.      engaging in activity subject to penalty under § 6701, including preparing or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that they know will, if used, result in an understatement of tax liability;

3.      promoting, marketing, organizing, selling, or receiving payment for any plan or arrangement regarding the securing of any tax benefit that they know or have reason to know is false or fraudulent as to any material matter;

---

[12]  Because Defendants submitted numerous materials outside of the pleadings in support of its motion to dismiss, the United States cross-moved for summary judgment, and Defendants have had an opportunity to reply to the cross-motion, Defendants' motion is properly considered as one made under Rule 56.  See Fed. R. Civ. P. 12(b).  Even without converting Defendants' motion, this matter is fully resolved upon Plaintiff's cross-motion for summary judgment.

4. engaging in any other activity subject to penalty under IRC §§ 6700 or 6701 or other penalty provision of the Internal Revenue Code;

5. advising or instructing persons and/or entities that they are not required to file federal tax returns or pay federal taxes;

6. selling, distributing or furnishing any document, newsletter, book, manual, videotape, audiotape, or other material purporting to enable individuals to discontinue or stop withholding, or payment of, federal taxes;

7. instructing, advising, or assisting anyone to stop withholding or paying of federal employment or income taxes; and

8. obstructing or advising or assisting anyone to obstruct IRS examinations, collections, or other IRS proceedings.

b. Defendants shall, at their own expense, notify all persons who have purchased or otherwise obtained their tax plans, arrangements, and materials of this Memorandum, Decision and Order and provide them with a copy of this Memorandum, Decision and Order;

c. Defendants shall produce to counsel for the United States a list identifying by name, address, e-mail address, telephone number, and Social Security number, all persons and entities who have been provided Defendants' tax preparation materials, forms, and other materials containing false information and otherwise likely to cause others to violate the tax laws of the United States;

d. Defendants, and anyone in active concert or participation with them, shall remove from their websites and all other websites over which they have control, all tax-fraud scheme promotional materials, false commercial speech concerning the internal revenue laws, and speech likely to incite others imminently to violate the internal revenue laws;

e. Defendants shall remove from its websites all abusive tax shelter promotional materials, false commercial speech, and materials designed to incite others to violate the law (including tax laws), and, for a period of one year from the date of this Memorandum, Decision & Order, display prominently on the first page of the website an attachment of this Memorandum, Decision and Order;

     f.        Defendants shall immediately implement the terms of this injunction and provide the Court with an affidavit of compliance within twenty-one days of the date of this Decision and Order; and

     g.       This Court shall retain jurisdiction concerning Defendants' compliance with the injunctive relief.

IT IS SO ORDERED.

Dated:   August 9, 2007

Thomas J. McAvoy
Senior, U.S. District Judge